BYBEE, Circuit Judge,
with whom TASHIMA, Circuit Judge, and WOOD, Senior District Judge, join, concurring:
I agree that United States v. Mendez, 992 F.2d 1488 (9th Cir.1993), requires our per curiam holding that conspiracy to commit robbery is a “violent felony” under 18 U.S.C.-§ 924(e)(2)(B)(ii). I write separately to question the reasoning and continued validity of Mendez.
I
Not'all felonies are “violent felonies.” As indicated by its title, the Armed Career Criminal Act’s (“ACCA”) fifteen-year mandatory prison term is intended for career criminals, those offenders whose prior *658 crimes “reveal a degree of callousness toward risk” and “show an increased likelihood that the offender is the kind of person who might deliberately point [a] gun and pull the trigger.” Begay v. United States, 553 U.S. 137, 146, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008); see also Sykes v. United States, — U.S. -, 131 S.Ct. 2267, 2275, 180 L.Ed.2d 60 (2011). By contrast, the ACCA’s fifteen-year mandatory minimum sentence was not intended for “reckless polluters” or those who “recklessly tamper with consumer products.” Begay, 553 U.S. at 146-47, 128 S.Ct. 1581.
When determining whether a felony is a “violent felony” courts must “employ the ‘categorical approach’ ” to determine whether an offense “ ‘involves conduct that presents a serious potential risk of physical injury to another.’ ” James v. United States, 550 U.S. 192, 201-02, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). Under the categorical approach, the relevant inquiry is whether the statutory elements of the offense “are of the type that would justify its inclusion within the residual provision.” Id. at 202, 127 S.Ct. 1586.
Mendez does not satisfy this standard for two reasons. First, Mendez treats the elements of conspiracy to commit a crime as identical to the elements of the underlying crime. Second, proceeding from that faulty premise, Mendez holds that conspiracy to commit robbery is a crime of violence even though conspiracy rarely, if ever, presents a serious potential risk of injury to another.
II
In Mendez, we used the categorical approach — as we understood it in 1993 — to determine “whether conspiracy to rob is ... by definition [ ] a ‘crime of violence’ ” under 18 U.S.C. § 924(c)(1). 992 F.2d at 1490-91. This was a good start, but we then broadly declared, intuitively, but without any analysis of the elements of robbery as defined in the Hobbs Act, that “[rjobbery indisputably qualifies as a crime of violence.” Id. at 1491. Then, without any analysis of the elements of conspiracy, we decided that conspiracy to commit robbery presents the same serious potential risk of physical injury as completed robbery because the existence of a criminal conspiracy increases the chances the planned crime will be committed. Id. at 1492.
In addition to being illogical, Mendez’s conclusion is questionable in light of recent Supreme Court precedent. In James, the Court considered whether attempted burglary was a violent felony under the ACCA’s residual clause, even though burglary is one of the violent felonies enumerated in the ACCA’s residual clause. 550 U.S. at 195, 127 S.Ct. 1586. A prolonged analysis would have been wholly unnecessary if the inchoate offense, attempted burglary, was the same as the actual felony, burglary. But, as the Court determined, inchoate offenses may pose different risks than the underlying offense. Id. at 204, 127 S.Ct. 1586. For example, “the risk posed by an attempted burglary ... may be even greater than that posed by a typical completed burglary” because attempted burglaries' are often thwarted by an intervenor. Id. Thus, James demonstrates that every inchoate offense must be considered individually, regardless of whether the underlying offense is categorically a violent felony, because different offenses pose different risks.
James is consistent with the well-established rule that inchoate offenses are separate from completed offenses. Iannelli v. United States, 420 U.S, 770, 778, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975) (“This Court repeatedly has recognized that a conspira *659 cy poses distinct dangers quite apart from those of the substantive offense.”); Braverman v. United States, 317 U.S. 49, 54, 63 S.Ct. 99, 87 L.Ed. 23 (1942) (“A conspiracy is not the commission of the crime which it contemplates, and neither violates nor ‘arises under’ the statute whose violation is its object.”); see also United States v. Iribe, 564 F.3d 1155, 1160 (9th Cir.2009) (quoting United States v. Macias-Valencia, 510 F.3d 1012, 1014 (9th Cir.2007) (‘“Conspiracy and attempt are inchoate crimes that do not require completion of the criminal objective.’ ”)).
This case presents a prime example of the significant differences between an inchoate offense (conspiracy to commit robbery) and a completed offense (robbery). In Nevada, robbery is defined as:
the unlawful taking of personal property from the person of another, or in the person’s presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person or property, or the person or property of a member of his or her family, or of anyone in his or her company at the time of the robbery.
Nev.Rev.Stat. § 200.380(1). “More briefly stated, robbery has as its elements the taking of the property of another from his person or presence through the application of force or fear.” State v. Feinzilber, 76 Nev. 142, 350 P.2d 399, 401 (1960) (discussing Nev.Rev.Stat. § 200.380(1)).
By comparison, Nevada’s conspiracy statute, Nev.Rev.Stat. § 199.480, simply states that conspiracy occurs “whenever two or more persons conspire to commit murder, robbery, sexual assault, [or other enumerated offenses].” Unlike some states, Nevada does not require an overt act in pursuance of the crime, Nev.Rev. Stat. § 199.490, so “[t]he gist of the crime of conspiracy is the unlawful agreement or confederation.” Lane v. Torvinen, 97 Nev. 121, 624 P.2d 1385, 1386 (1981).
The Supreme Court of Nevada addressed the difference between conspiracy to commit robbery and robbery in Nunnery v. Eighth Judicial Dist. Court ex rel. County of Clark, 124 Nev. 477, 186 P.3d 886 (2008) (per curiam), in order to decide whether “conspiracy to commit robbery is [ ] a felony involving the use or threat of violence.” Id. at 887. The court began by analyzing an earlier case where it decided that solicitation to commit murder is not a violent .crime because “in the crime of solicitation, the harm is the asking — nothing more need be proven.” Hidalgo v. Eighth Judicial Dist. Court, 124 Nev. 330, 184 P.3d 369, 373 (2008) (en banc) (per curiam) (citations and internal quotation marks omitted).[1] The Supreme Court of Nevada then explained that Hidalgo “applie[d] with equal force here” because “conspiracy is committed upon reaching the unlawful agreement.” Nunnery, 186 P.3d at 888. And because conspiracy does not require an overt act — let alone, a violent one — the Supreme Court of Nevada concluded, “although conspiracy to commit robbery involves conspiring to commit a violent act, it is not itself a felony involving the use or threat of violence.” Id. at 889.
I see no reason why this court should diverge from the Supreme Court of Neva *660 da’s sound reasoning and the well-established law that conspiracy to commit a crime is not the same as committing a crime. But until we are willing to reevaluate Mendez, offenders like Chandler will be categorized as “career offenders” based on robberies which they discussed but did not actually commit.
Ill
Furthermore, because of its illogical holding that conspiracy to do x = x, Mendez did not evaluate whether the elements of conspiracy to commit robbery “involve[ ] conduct that presents a serious potential risk of physical injury to another.” 18U.S.C. § 924(e)(2)(B)(ii). I submit that this omission significantly undermines Mendez’s continued validity because conspiracy to commit robbery does not “show an increased likelihood that the offender is the kind of person who might deliberately point [a] gun and pull the trigger.” Begay, 553 U.S. at 146, 128 S.Ct. 1581.
There is little doubt that robbery poses a “serious potential risk of physical injury to another” at the time it is committed. See" United States v. Harris, 572 F.3d 1065, 1066 (9th Cir.2009) (per curiam) (determining that “a conviction under Nev. Rev.Stat. § 200.380 [for robbery] categorically qualifies as a crime of violence for purposes of the career offender sentencing enhancement” under the Sentencing Guidelines).
Conspiracy to commit robbery, however, poses a risk that a robbery will be committed only in the future. See Chambers v. United States, 555 U.S. 122, 128, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009) (rejecting the government’s argument that an offense is a violent felony because it posed a risk of violence in the future); Lane, 624 P.2d at 1386 (“The gist of the crime of conspiracy is the unlawful agreement or confederation.”). And as the Supreme Court of Nevada has aptly explained, “a risk or potential of harm to others does not constitute a threat.” Hidalgo, 184 P.3d at 373 (citations and internal quotation marks omitted); see also Nunnery, 186 P.3d at 888-89 (holding that conspiracy to commit robbery is not a violent crime because “the elements of conspiracy to commit robbery do not include the use dr threat of violence to the person of another”).
Mendez incidentally acknowledges the difference between imminent and future harm. 992 F.2d at 1491-92 (“[W]here conspirators agree to use ‘actual or threatened force, or violence’ to obtain personal property from, another ... the risk that physical force may be. used ... is substantial.” (emphasis added) (citations and internal quotation marks omitted)). But Mendez does not recognize that although a person conspiring to commit robbery is “doing. something at the relevant time, there is no reason- to believe that the something poses a serious potential risk of physical injury.” Chambers, 555 U.S. at 128, 129 S.Ct. 687. “To the contrary, an individual who [conspires to commit robbery] would seem unlikely, not likely, to call attention to his whereabouts by simultaneously engaging in additional violent and unlawful conduct.” Id. at 127, 129 S.Ct. 687; see also Grunewald v. United States, 353 U.S. 391, 402, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) (“For every conspiracy is by its very nature secret; a case can hardly be supposed where- men concert together for crime and advertise their purpose to the world.”).
It is only when overt acts directed toward the commission of the crime are committed that a crime begins to pose a “serious potential risk of physical injury to another.” 18 U.S.C. § 924(3)(2)(B)(ii). But, in Nevada, once there has been an overt act, the offense is no longer a mere *661 conspiracy.[2] Nunnery, 186 P.3d at 888-89. Instead, the offense becomes either attempted or completed robbery — offenses which ordinarily pose a'more serious potential risk of harm to others.
In other words, conspiracy is at least one “step away from any physical dimension.” United States v. Raupp, 677 F.3d 756, 763 (7th Cir.2012) (Wood, J., dissenting). And because the “step” between discussing or even agreeing on possibilities and physical action is a significant one, I maintain that conspiracy to commit robbery is simply not an offense “of the type that would justify its inclusion within the residual provision.” James, 550 U.S. at 202, 127 S.Ct. 1586. At the very least, the risk of serious physical harm posed by conspiracy to commit robbery — Mendez notwithstanding — is substantially different from the risk of serious harm posed by robbery.
IV
Despite these concerns, I, like the majority, cannot say that the Supreme Court’s ACCA decisions “undercut the theory or reasoning” of Mendez “in such a way that the cases are dearly irreconcilable.” Miller v. Gammie, 335 F.3d 889, 900 (9th Cir.2003) (en banc) (emphasis added). Indeed, interpretation of the ACCA is challenging, and the circuits are split over whether conspiracy is a violent felony.
At least five circuits have held that conspiracy may qualify as a violent felony. See United States v. Gore, 636 F.3d 728, 738 (5th Cir.2011) (“An agreement to commit aggravated robbery presents a serious potential risk of injury.... This is particularly true when an overt act in furtherance of the agreement is performed. We need not consider whether an agreement without such an overt act would suffice for purposes of the ACCA.”); United States v. White, 571 F.3d 365, 372 (4th Cir.2009) (“[T]he essential conduct underlying the Conspiracy Offense is categorically violent. The Conspiracy Offense - cannot be divorced from"-its violent objective — robbery with a deadly weapon.”); United States v. Boaz, 558 F.3d 800, 807 (8th Cir.2009) (“The § 924(e) analysis of a prior conspiracy conviction is governed by the substantive offense that was the object of the conspiracy_”); United States v. Hawkins, 139 F.3d 29, 34 (1st Cir.1998) (holding that conspiracy to commit armed robbery is a violent felony under the" ACCA because “tw]e have also unequivocally held that conspiracy to commit->a crime of violence ..: it itself a crime of violence”); United States v. Preston, 910 F.2d 81, 87 (3d Cir.1990) (“Since [the defendant] was convicted of conspiracy to commit a violent felony, the use or threat of physical force was a part of his prior conviction for this crime.”).
By contrast, at least two circuits have held that conspiracy does not qualify as a violent felony. See United States v. Whitson, 597 F.3d 1218, 1222 (11th Cir.2010) (per curiam) (“Conspiring to commit a crime is a purposeful act.... "But in South Carolina, the ‘gravamen of conspiracy is an agreement or combination. An overt act in furtherance of the conspiracy is not necessary to prove the crime.’ ”) (internal citation omitted) (reaffirmed and applied in *662 United States v. Lee, 631 F.3d 1343, 1349 (11th Cir.2011)); United States v. Fell, 511 F.3d 1035, 1039-41 (10th Cir.2007) (holding that a Colorado conviction for conspiracy to commit second-degree burglary was not a violent felony because “[although there is an overt act element, the act need not be directed toward the entry of a building or structure.... [M]any overt acts sufficient to sustain a Colorado conspiracy conviction create no risk of a violent confrontation between the defendant and an individual interacting with the conspirator while the overt act is being committed.”); United States v. King, 979 F.2d 801, 804 (10th Cir.1992) (explaining that the Tenth Circuit “look[s] only to the elements of the conspiracy crime” and holding that conspiracy to commit robbery does “not necessarily present circumstances which created the high risk of violent confrontation inherent in a completed [armed robbery]” (alteration in original) (quotation marks and citation omitted)).
The circuit split shows that there are valid reasons to believe the Supreme Court’s ACCA cases did not “clearly” overrule Mendez’s holding that conspiracy to commit robbery categorically is a crime of violence (and thus a violent felony). But in light of the questionable reasoning in Mendez and intervening Supreme Court precedent, I submit that whether conspiracy can qualify as a violent felony is a difficult issue that warrants our en banc consideration.

. Hidalgo also included observations that are equally applicable to conspiracy. For example, conspiracy, much like "[s]olicitation is criminalized ... because it carries the risk or possibility that it could lead to a consummated crime,” but under Nevada law "a risk or potential of harm to others 'does not constitute a "threat.” ’ ” Id. (quoting Redeker v. Eighth Judicial Dist. Court ex rel. County of Clark, 122 Nev. 164, 127 P.3d 520, 527 (2006)). "Obviously, the nature of the crime Hidalgo allegedly solicited is itself violent. But this does not transform soliciting murder into threatening murder.” Id. at 374, 127 P.3d 520.

. The Supreme Court of Nevada aptly explained this difference: "Between preparation for the attempt and the attempt itself, there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made.” State v. Verganadis, 50 Nev. 1, 248 P. 900, 901 (1926) (citation and internal quotation marks omitted).